CULPEPPER IP, LLLC
Kerry S. Culpepper, Hawaii Bar No. 9837, *pro hac vice*
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:  (202) 204-5181
E-Mail:     kculpepper@culpepperip.com

Attorney for Plaintiffs:
Santa Files Productions, LLC; and
Laundry Films, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Santa Files Productions, LLC et al., | ) | **Case No.: CV-20-1883-PHX-SRB** |
| --- | --- | --- |
| Plaintiffs, | ) | (Copyright) |
| vs. | ) | **MOTION FOR DEFAULT JUDGMENT; DECLARATIONS OF COUNSEL, JOSHUA LEE AND STEPHANIE KESSNER; EXHIBITS "1"-"3"; PROPOSED ORDER; CERTIFICATE OF SERVICE** |
| Richard Dabney et al., | ) | |
| Defendants. | ) | |

**MOTION FOR DEFAULT JUDGMENT**

Pursuant to Fed R. Civ. P. 55(b)(2), Plaintiffs Santa Files Productions, LLC ("Santa") and Laundry Films, Inc. ("Laundry") (collectively "Plaintiffs") hereby submit their motion for default judgment on all claims against Defendants Richard Dabney ("Dabney") and Jesse D. Parks ("Parks") (collectively "Defendants").

## I. INTRODUCTION

Defendants registered for an account with the notorious movie piracy website YTS using the email address "princessjesse2000@gmail.com" and used their registered account to download torrent files for copying Plaintiffs' motion pictures *Saving Christmas* and *Lost Child* ("Works") among many others from their home Internet service. *See* Complaint [Doc. #1] at ¶¶13-21. Defendants used the BitTorrent Client software application "Torrent RT FREE" to execute these torrent files and thereby download, reproduce and distribute illegitimate copies of Plaintiffs' Works under the file names "Lost Child 2018 [720p] [YTS] [YIFY]" and "Saving Christmas (2017) [WEBRip] [1080p] [YTS.AM]" to others. *Id*. at ¶¶18-20, 73. Defendants continued this conduct despite receiving at least one notice from their Internet Service Provider concerning their infringing activity. *Id*. at ¶21.

In response to a written communication Plaintiffs' counsel sent to Defendant Parks on June 3, 2020 requesting her to stop infringing Plaintiff Laundry's Work and pay a portion of Laundry's damages, Defendants admitted to having shared copies of *Lost Child* and agreed to pay a portion of Laundry's damages ($750) to settle the matter. *Id.* at ¶¶72-81. Defendants failed to comply with the agreement. Moreover, when Plaintiffs' counsel inquired whether Defendants were going to pay the amount they agreed to pay, Defendant Dabney responded with racial and homophobic epithets directed towards Plaintiffs' counsel. *Id*. at ¶88. When

Defendants were served the Complaint and summons, Defendant Dabney left a nasty message on the voicemail of Plaintiffs' counsel to the effect of inviting Plaintiffs' counsel to perform a sexual act on him and reiterating that he would never pay a "dime".  Decl. of Stephanie Kessner at ¶6.

## II. ARGUMENT

The Complaint alleges claims for: (1) direct and contributory copyright infringement, in violation of the United States Copyright Act, 17 U.S.C. §§ 106 and 501; (2) violations under the Digital Millennium Copyright Act, 17 U.S.C. §1202; and (3) Breach of Contract in violation of the common law of Arizona and/or Hawaii.  Plaintiffs voluntarily withdraw their claim for Breach of Contract.

A.     <u>Copyright Infringements Have Been Established</u>

A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006).  In the Complaint, Plaintiffs allege that they own the copyrights for the Works and included the Copyright Registration numbers issued by the Register of Copyrights.  *See* Exhibit 1 [Doc. #1-2] of the Complaint. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89

(9th Cir. 2000) (citing 17 U.S.C. § 410(c) (1994)). Moreover, because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendants infringed upon Plaintiffs' copyrights and that their infringements were knowing and willful. *See* Complaint at ¶¶17-20, 101, 107.

B.  Contributory Copyright Infringements Have Been Established

The Ninth Circuit has held that "[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007). Material contribution exists if the defendant engages in personal conduct that encourages or assists the infringement. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).

Here, Defendants installed a BitTorrent Client "Torrent RT Free" onto their computer and materially contributed to infringement by participating in a BitTorrent swarm with other users to distribute Plaintiffs' Works. *See* Complaint at ¶¶35, 50-54, 104-107. By using the BitTorrent Client to participate in the BitTorrent swarms with others, Defendants knowingly induced or materially contributed to the infringing conduct of Plaintiffs' Works by others.

C.  DMCA Violations have been established

17 U.S.C. § 1202(a)(2) states: "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— distribute or import for

distribution copyright management information ["CMI"] that is false." 17 U.S.C. § 1202(b)(2)-(3) states: "No person shall, without…authority…(2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority…or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority…— knowing, or…having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

To qualify as CMI under the statute, the information must be "conveyed in connection with" copies or displays of the work, "including in digital form"; information in a copyright notice can constitute CMI. 17 U.S.C. § 1202(c). Here, the file titles of the digital copies Works (modified to include "YTS") distributed by Defendants, qualifies as CMI as provided by 1202(c). *See* Complaint at ¶68.

Plaintiffs have established that Defendants meet the dual intent standard of section 1202, namely, the Defendants' intent to induce, enable, facilitate, or conceal infringement and knowledge of the CMI as required by section 1202(a) or (b). With respect to 1202(b), the standard is "reasonable grounds to know." 17 U.S.C. § 1202(b). Defendants *knew* the piracy website "YTS" from which they obtained their torrent files was distributing illegal copies of Plaintiffs' Works. *See* Complaint at ¶¶68-69. Further, Defendants *knew* their copies were illegal by the unauthorized alteration of CMI to include the wording "YTS". *Id*. at ¶¶70, 113. Defendants *knew*

that the wording "YTS" originated from the notorious movie piracy website for which they had a registered account. *Id*. at ¶¶114-115. Still, Defendants distributed the false CMI with the BitTorrent swarm with the intent to induce, enable, facilitate, or conceal infringement, in violation of 17 U.S.C. § 1202(a)(2). *Id*. at ¶¶68-71, 110. Defendants also distributed the altered CMI and copies of Plaintiffs' Works with the altered CMI knowing it will induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C. § 1202(b)(2)-(3) by the very nature of BitTorrent – this is how they obtained their illegitimate copies. *Id*. at ¶¶68-71, 111-115. Thus, unlike *Stevens v. CoreLogic*, the Plaintiffs have established that Defendants demonstrated a "pattern of conduct" (massive movie piracy) or "modus operandi" (use of a notorious piracy site) that indicates that Defendants knew that the result of their actions would be infringement due to their use of a notorious piracy website. *Stevens v. CoreLogic*, 899 F.3d 666 (9th Cir. 2018), cert denied, 586 U.S. __ (U.S. Feb. 19, 2019).

D.  <u>Default Judgment is Appropriate</u>

Despite being personally served with a copy of the Complaint, Defendants failed to appear. As a result, Plaintiffs requested and received an entry of default. [Docs. ##10, 11]. Because Defendants have chosen to default instead of defending, they have admitted the truth of the allegations asserted in the Complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating

to the amount of damages, will be taken as true."). While the court may conduct a hearing to determine damages, *see* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiffs. *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

Plaintiffs now respectfully request that this Court enter a default judgment against Defendants. When evaluating whether to grant a judgment by default, courts consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012). All of these factors support the conclusion that Plaintiffs are entitled to a default judgment.

1. The possibility of prejudice to Plaintiffs

Plaintiffs would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiffs without any remedy against Defendants, who have failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

Cal. 2002). Despite the fact that Defendants don't deny that Plaintiffs are entitled to an award of statutory damages, attorney's fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against him, Plaintiffs would be left unable to seek damages. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

      2. & 3. Merits of Plaintiffs' substantive claims and sufficiency of the Complaint

      Plaintiffs have adequately pled their claims for copyright infringement. In the Complaint, Plaintiffs alleged that they own the copyrights for the Works and included the Copyright Registration Numbers issued by the Register of Copyrights [Doc. #1-2]. Moreover, because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendants infringed upon Plaintiffs' copyrights and that their infringement was both knowing and willful. *See* Complaint at ¶¶17-20, 101, 107.

      In *Cobbler Nevada, LLC v. Gonzales,* the Ninth Circuit concluded that a bare allegation that a defendant is the registered subscriber of an IP address associated with infringing activity is not sufficient to state a claim for direct or contributory infringement. *See Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1144 (9th Cir. 2018). However, Plaintiffs assert that Defendants registered for an account with a piracy site using their email address, downloaded torrent files from the piracy site,

and used the BitTorrent Client "Torrent RT FREE" to download, reproduce and share copies of Plaintiffs' Works. *See* Complaint at ¶¶13-21, 73-74. Moreover, Defendants admitted to infringing one of the Works. *See Id.*, Decl. of Kessner at ¶2. Accordingly, Plaintiffs allege significantly more than merely Defendants being registered subscriber of an IP address associated with infringing activity.

    4.   The sum of money at stake in the action

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

    5.   The possibility of a dispute concerning the material facts

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendants' default, this Court must take the factual allegations asserted in the Complaint as true. *See TeleVideo Sys., Inc., supra*, 826 F.2d at 917–18. Moreover, Defendants have not made any attempt to contest those allegations (or for that matter, even bothered to appear).

    6.   Whether the default was due to excusable neglect

Defendants' default is not the result of excusable neglect. As discussed above, Defendants were personally served a copy of the original complaint [Doc. ##8-9]. Upon being served, Defendant Dabney left a nasty message on Plaintiff counsels' voice mail. *See* Decl. of Kessner at ¶6.

Thus, on several occasions, Defendants have been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendants' decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7. The policy considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendants' failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiffs default judgment. Absent a judgment by default, Plaintiffs will not be made whole and have no mechanism to prevent further infringement of its copyright by these same Defendants. In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiffs a default judgment against Defendants.

### III.  STATUTORY DAMAGES FOR COPYRIGHT INFRINGEMENT

Plaintiffs elect to receive statutory damages of no less than $30,000 total for Defendants' infringements of the Works. Pursuant to 17 U.S.C. § 504(c), "A plaintiff

may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiffs are entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for Defendants' violations of the Copyright Act. 17 U.S.C. §§ 504(c)(1) and (2).

Plaintiffs' request of no less than $15,000/Work is similar to the Judgment entered on May 1, 2016, in *LHF Productions, Inc. v. Unknown Parties, et al.*, Case No. 2:16-cv-01199. (Final Judgment, attached as Exhibit "1".) *LHF Productions, Inc. v. Unknown Parties, et al.* involved different parties but also concerned defendants that utilized a BitTorrent swarm to illegally download the plaintiff's copyrighted major motion picture. In both cases, the defendants were served with process and failed to appear. In both cases, the plaintiff sought an award of $15,000.00 in statutory damages. As set forth in the attached Final Default Judgment, as a result of defendant's copyright infringement, the Court entered judgment against the defendant in the amount of $15,000.00 in statutory damages. The Court also granted injunctive relief.

**IV.    STATUTORY DAMAGES FOR DMCA VIOLATIONS**

11

Plaintiffs elect to receive statutory damages of no less than $5,000 total for Defendants' DMCA violations, namely knowingly distributing copyright management information ("CMI") altered to falsely included the wording "YTS" in violation of 17 U.S.C. § 1202(a)(2), (b)(2) and (b)(3).  Pursuant to 17 U.S.C. § 1203(c)(3)(B), Plaintiffs are entitled to an award of "…the sum of not less than $2,500 or more than $25,000" for each DMCA violation.  Plaintiffs only request the minimum amount of $2,500 for each DMCA violation.

## V.     PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. See 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).  Plaintiffs respectfully request that this Court grant a permanent injunction enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works.

## VI.    PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND TAXABLE COSTS

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiffs assert that the following factors support granting its motion for attorney's fees: (1) Plaintiffs' degree of success in the litigation; (2) deterrence; (3) furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's factual and legal components.

A. The Degree of Success in the Litigation

In this case, Plaintiffs' suit against Defendants was a total success. Plaintiffs alleged that Defendants willfully violated its exclusive rights under the Copyright Act. *See* Complaint at ¶¶17-20, 101, 107.

B. Deterrence

The interest of deterrence weighs in favor of granting Plaintiffs' motion for attorney's fees. Not only did Defendants download and reproduce copies of the Works without a license, Defendants also shared copies with numerous others. *See* Complaint at ¶¶18-20. Accordingly, the interest of deterrence weighs in favor of fee-shifting.

C. The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc.*, 499 U.S. at 349-50. Defendants pirated and distributed Plaintiffs' Works. Thus, Defendants' conduct frustrates the goals of the Copyright Act.

D. Objective Unreasonableness

The objective unreasonableness of Defendants' conduct also supports fee-shifting. Defendants' failure to appear or otherwise defend prevented Plaintiffs from conducting discovery. Further, Defendants' conduct forced Plaintiffs to file the

present motion for default. The unreasonableness of Defendants' conduct during this litigation supports awarding attorney's fees to Plaintiffs.

E.     Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.*Kerr*, 526 F.2d at 70.

The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992) (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiffs request the following lodestar amount for attorney's fees it incurred in this case as detailed in the attached Declarations with regards to Defendants:

| | | |
|---|---|---|
| KERRY CULPEPPER | 8.95 hours @ $350/hour = | $3,132.50 |
| JOSHUA LEE (Law Clerk) | 8.25 hours @ $150/hour = | $1,237.50 |
| STEPHANIE KESSNER (Legal Assistant) | 13.5 hours @ $21/hour= | $283.50 |

Additionally, Plaintiffs seeks to recover taxable costs of $460. The taxable costs requested from Defendants include the $400 filing fee for filing the complaint and $60 fee to serve the Complaint upon Defendants.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada*

*County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. According to the American Intellectual Property Law Association's *Report of the Economic Survey* (2015), the 2014 mean hourly rate for a solo practitioner specializing in Electrical technologies is $379, higher than Plaintiffs' Counsel's rates. Am. Intellectual Prop. Law Ass'n, *Report of the Economic Survey* (2015), at I-15. Exhibit 2 at pg. 1. Similarly, the 2014 mean hourly rate for an associate attorney at a private firm is $279, higher than Plaintiffs' associate counsel's rates. *Id*. at pg. 2.

## VIII. **CONCLUSION**

Accordingly, Plaintiffs respectfully request that the Court enter default judgment against Defendants jointly and severally and issue an award of statutory damages in favor of Plaintiffs of $35,000, attorneys' fees in the amount of $4,653.50, and taxable costs of $460.

DATED: Kailua-Kona, Hawaii, November 9, 2020.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs